Timothy West McCORQUODALE

v.

Charles BALKCOM, Warden, Georgia State Prison.

Civ. A. No. C 79-95.

United States District Court, N. D. Georgia, Atlanta Division.

Oct. 21, 1981.

John R. Myer, Atlanta, Ga., Jack Greenberg, James M. Nabrit, III, Joel Berger, John Charles Boger, New York City, Anthony G. Amsterdam, Stanford, Cal., for plaintiff.

Lewis R. Slaton, Fulton County Dist. Atty., H. Allen Moye, Asst. Fulton County Dist. Atty., John W. Dunsmore, Jr., Asst. Atty. Gen., State of Ga., Atlanta, Ga., for defendant.

### ORDER

ORINDA D. EVANS, District Judge.

This case is before the Court on Petitioner's motion for a further evidentiary hearing and for oral argument before this Court. Petitioner's request for oral argument has previously been granted in part, the Court having heard oral argument on two of Petitioner's contentions pursuant to his request. Otherwise, the motion for further oral argument is hereby DENIED.

In his motion for a further evidentiary hearing, Petitioner asks this Court to hold a hearing in order to consider certain testimony ruled inadmissible or non-discoverable by the Magistrate.

Petitioner's specific complaints are these. First, the Magistrate declined to compel Dennis A. York, Assistant to the Supreme Court of Georgia, to give deposition testimony relative to certain aspects of the Court's sentence review procedures, which matters were deemed by the Magistrate to be subject to a judicial privilege. *See* Order of April 2, 1979, referencing the Magistrate's Order of January 15, 1979 and Judge Edenfield's Order of February 24, 1979, in a then-companion case, *House v. Balkcom,* C78–1471A.

Second, Petitioner complains of the Magistrate's decision not to require the Chief Justice of the Georgia Supreme Court, H. E. Nichols, to appear personally or by deposition to corroborate, deny or explain, comments attributed to him by the press on the subject of the death penalty, Petitioner's contention being that the then-Chief Justice (who participated in review of Petitioner's case) was so biased as to deprive Petitioner of a fair sentence review. Although the Magistrate denied Petitioner's motion to compel the attendance of the Chief Justice, the Magistrate's Report reflects that he assumed the Chief Justice had been correctly quoted in the press.

Third, Petitioner complains of the Magistrate's refusal to admit certain statistical data into evidence; namely, Petitioner's Exhibits Nos. 9, 12–21 and 31, and related expert testimony. Petitioner made an extensive offer of proof on this matter at the hearing before the Magistrate, who thereafter by Order entered August 8, 1979, ruled the evidence inadmissible.

Having reviewed the transcript of the hearing held before the Magistrate, the evidence tendered at the hearing, the Magistrate's Report and Recommendation (which is the subject of a separate Order of even date herewith), the record in the instant case, the deposition of Dennis A. York taken November 13, 1978 in *House v. Balkcom,* C78–1471A, United States District Court for the Northern District of Georgia, and other relevant portions of the *House* record,[1] the Court is of the opinion that no further evidentiary hearing is necessary or appropriate because the Court finds the rulings of the Magistrate which were challenged by Petitioner to have been either correct or if incorrect, harmless error as shown in subsequent portions of this Order.

In order to evaluate Petitioner's claims concerning Mr. York's sought-for testimony, it is necessary to review his deposition taken in the *House* case. In that deposition, he explained the functions he performs for the Georgia Supreme Court. Specifically, he reviews transcripts of capital felony cases which are appealed to the Georgia Supreme Court. This includes all death cases, as to which review is automatic under Georgia law, and all life sentence cases

---

1. These portions of the *House* file have been made a part of the record herein. See the

Court's Order of October 5, 1981.

which are, at the election of the defendant, appealed. Based on his review of the trial transcript, Mr. York prepares for the Supreme Court a "card summary" on each case. These cards contain a factual narrative of the crime including notation of mitigating circumstances. These card summaries are maintained in a file in Mr. York's office, which is in the building occupied by the Georgia Supreme Court. He testified in the deposition that he responds to requests from the Justices for card summaries. He also when requested provides written reports on specific subjects. He recalled one report dealing "with family type murders and one with cases in which an aggravating circumstance was found but the jury did not impose the death penalty." (November 13, 1978 deposition, p. 54). Beyond that, Mr. York basically declined to furnish information concerning how the cards are used or interpreted by him when responding to requests from the Justices or how the cards are used by the Justices themselves. Mr. York deemed his activities in this regard to be either akin to those of a law clerk or those of an attorney acting for a client. The Magistrate in his order of January 15, 1979, in the *House* case agreed with Mr. York as to the judicial privilege; the District Court in its order of February 24, 1979 in the same case affirmed the Magistrate.

In ruling on Petitioner's motion for leave to conduct discovery in the instant case, the Magistrate ordered that "the deposition of Dennis A. York shall be governed by the principles enunciated in this Court's order in the case of *House v. Balkcom*, C78–1471A, in the event that Mr. York shall assert a judicial privilege." *See* Magistrate's Order of April 2, 1979. Thereafter, Mr. York's deposition was taken on May 14, 1979. There was no further motion to compel with respect to Mr. York's testimony.

The Court has reviewed the January 15, 1979 order of the Magistrate in which he finds, after considerable analysis, that Mr. York was entitled to invoke a judicial privilege as to those phases of his work in which he deals directly with the Georgia Supreme Court Justices. Also, the Court has reviewed Petitioner's contentions regarding alleged inadequacy of the sentence review process in Georgia, and the Magistrate's Report and Recommendation regarding said contentions, see pp. 38–44, Magistrate's Report and Recommendation of January 9, 1980. The Court finds that it is unnecessary to rule on whether or not the Magistrate correctly analyzed York's claim of judicial and/or attorney-client privilege, because the Court finds that the sought-for testimony would not in any way have furthered Petitioner's claim of inadequate sentence review procedures. Petitioner wishes to show the Court that the Georgia Supreme Court has not consistently or even handedly compared factually similar cases when conducting the mandated sentence review. He has offered an expert statistical analysis which he contends reveals lack of similarity between cases asserted by the Supreme Court of Georgia to be similar in its comparative sentence review. Petitioner urges that further testimony from Mr. York might reveal an absence of systematic procedures which would explain the claimed lack of similarity, and buttress his argument that the sentence review is being conducted in an arbitrary manner.

The Court finds that under the holding in *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir. 1978), York's sought-for testimony would not be admissible or calculated to lead to admissible testimony. There, the Court held that where a state has a properly drawn, *i. e.*, constitutional on its face, statute which the state follows in determining which defendants receive the death penalty, then the federal habeas court's function does not include evaluating the actual operation of the system unless petitioner can first show that the circumstances of his particular case make the death penalty patently unjust. Since the Court cannot make such a finding based on the facts of Petitioner's case, his efforts to show arbitrariness generally in appellate sentence review are to no avail.

 Turning to Petitioner's contention that the then-Chief Justice of the Georgia

Supreme Court, H. E. Nichols, should have been required by the Magistrate to appear and testify concerning statements attributed to the Chief Justice by the press, the Court agrees with the Magistrate's ruling, particularly in light of the fact that the Magistrate assumed for purposes of his Report and Recommendation that the press account of statements attributed to the Chief Justice were in fact true. Therefore, the Court finds no purpose would be served in holding a further evidentiary hearing in this regard.

█ Finally, the Court turns to Petitioner's request that a further hearing be held so that Petitioner might have another opportunity to tender into evidence the statistical data contained in Petitioner's Exhibits Nos. 9, 12–21 and 31, and evidence relating thereto. Exhibits Nos. 9 and 12–21 show that there is a higher statistical probability of a defendant's getting the death penalty when he kills a white victim, as opposed to a black victim. Petitioner's Exhibit No. 31 shows that a white defendant is more apt to receive the death penalty than a black defendant. In his order of August 8, 1979, the Magistrate ruled that the exhibits were inadmissible because the data indicated therein had not been shown to be sufficiently reliable and secondly, that they were not probative to any legally relevant issue. The Court finds that Petitioner did not have an adequate opportunity to offer testimony which might have buttressed the reliability of his statistics. Thus, the Court does not accept the Magistrate's finding that the statistics were too unreliable to permit them to be admitted into evidence. However, the Court does agree with the Magistrate on the second point, namely, that these statistics are not relevant to any legal issue in this case.

According to an offer of proof [2] made by Petitioner at the evidentiary hearing before the Magistrate, Petitioner was prepared to prove that: (1) white capital felony defendants are substantially more likely to receive the death penalty than are black capital felony defendants; (2) whites generally kill whites and blacks generally kill blacks; and (3) the race of the victim, not that of the perpetrator, is the single most significant statistical factor in determining the probability that a given capital felony defendant will receive the death penalty. Implicit in the proffer is the assumption that if a black person kills a white person, his chances of receiving the death penalty are at least as great as those of a white person killing a white person. Therefore, Petitioner is essentially arguing that because our system of justice places a greater value on the life of a white victim than it does on the life of a black victim, the system is arbitrary and discriminatory in violation of the Eighth and Fourteenth Amendments; thus, the death penalty may not be invoked against either a white or a black defendant, citing *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and *Jurek v. Estelle*, 593 F.2d 672 (5th Cir. 1979). Thus, Petitioner argues that these statistics will enable him to prove the death penalty is being imposed in an arbitrary and capricious manner in violation of the Eighth and Fourteenth Amendments; also, that the death penalty is being applied in a discriminatory fashion in violation of the Eighth and Fourteenth Amendment prohibitions against cruel and unusual punishment and in violation of the Equal Protection Clause of the Fourteenth Amendment.

The Court finds Petitioner's contentions have been disposed of by the Fifth Circuit's opinion in *Spinkellink v. Wainwright, supra,* in which the Court held that where a state has in operation a sentencing review system which is constitutional on its face, a federal habeas court should not look behind the individual defendant's sentence and weigh evidence calculated to show that the system is being discriminatorily applied, *unless* the circumstances of the petitioner's case are such that petitioner is "so clearly undeserving of capital punishment that to impose it

---

2. Some of this proof may have actually been received in evidence, the Court being uncertain exactly where the offer of proof ended and the admitted testimony re-commenced. However, this is unimportant for present purposes.

would be patently unjust and would shock the conscience...." *Spinkellink, supra,* at 606, n.28, or where "petitioner can show some specific act or acts evidencing intentional or purposeful racial discrimination..." *Spinkellink, supra* at 614, n.40. As previously mentioned, the facts of Petitioner's case do not show that he is so clearly undeserving of capital punishment that to impose it would be patently unjust and shock the conscience. Further, in the Court's opinion, the mere fact that a person who kills a white is more apt to receive the death penalty than a person who kills a black does not permit an inference of purposeful racial discrimination against a defendant. In order for any material inferences to be drawn, the race of the defendant must be considered as well as the race of the victim. In so finding, the Court notes that it does not accept the Magistrate's finding that Petitioner has no standing to raise the aforesaid arguments, it appearing to the Court that the Fifth Circuit has ruled to the contrary. *Spinkellink, supra* at 612, n.36.

Having found no harmful error in the findings and rulings contained in the Magistrate's Order of April 2, 1979 (relative to the York testimony) or the Magistrate's Order of August 8, 1979 (relative to the proffered statistical evidence) and being in agreement with the Magistrate's decision not to compel the testimony of the Chief Justice of the Georgia Supreme Court, the Court is of the opinion that no further evidentiary hearing is required. Therefore, Petitioner's request for further evidentiary hearing is hereby DENIED. As previously noted, the request for oral argument has been granted in part; otherwise, it is DENIED.